[Civil No. 716.   Filed March 28, 1900.]
[60 Pac. 722.]

## WILLIAM C. MILLER, Defendant and Appellant, v. CHARLES L. DOUGLAS, Plaintiff and Appellee.

1. WATER AND WATER-RIGHTS—DIVERSION—CHANGING POINT OF—TRESPASS—ESTOPPEL.—Where an appropriator of water has for more than six years maintained a diversion dam within and a ditch across the field of another, the owner of the field is estopped by his acquiescence from denying the appropriator's rights therein upon the ground that he is a trespasser.

2. SAME—PUBLIC LANDS—ENTRY—SUBJECT TO EXISTING DITCH RIGHTS.—One taking possession of unoccupied public land takes it subject to the condition in which he finds it as to rights of way for ditches used in connection with valid appropriations of water.

3. PLEADINGS—DAMAGES—ISSUES—AMENDMENTS.—Where the complaint set out facts and prayed for damages which had accrued up to 1898, and no amendment or supplemental complaint covering the year 1898 was ever filed, it was improper to receive evidence of any injury sustained in 1898, although an amendment, changing the amount of damages claimed, was filed by leave of the court after trial, to conform to the proofs.

4. APPEAL AND ERROR—ASSIGNMENTS OF ERROR—MUST BE SPECIFIC—SUPREME COURT RULE 6, SUBD. 2, AND ACT 21, LAWS 1893, CONSTRUED—MARKS V. NEWMARK, 3 ARIZ. 224, 28 PAC. 960, FOLLOWED.—Rule 6 (subd. 2) of the supreme court rules provides: "If the assignment of error be that the court overruled a motion for a new trial, and the motion is based upon more than one ground, the same will not be considered as distinct and specific by this court, unless each ground is separately and distinctly stated in the assignment of errors." *Held*, an assignment of error, "that the court erred in overruling a motion for a new trial," is too general, and will not be considered, notwithstanding act No. 21, Laws 1893, provides that "Every motion for new trial shall specify generally the grounds upon which the motion is founded."

5. SAME—JUDGMENT.—The supreme court on appeal can render such judgment or decree as the court below should have rendered, except when it is necesary that some matter of fact be ascertained, or the damages to be assessed or the matter to be decreed is uncertain.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Cochise. George R. Davis, Judge. Modified.

C. S. Clark, Barnes & Martin, and Marcus A. Smith, for Appellant.

James Reilly, and William Herring, for Appellee.

STREET, C. J.—The appellee, Charles L. Douglas, brought an action in the district court of Cochise County against the appellant, W. C. Miller, and his wife, Jennie Miller, to recover damages for the loss of crops in the year 1897, and to obtain an injunction restraining defendants from interfering with a certain ditch through which plaintiff was diverting water to irrigate his lands. The case was tried to the court without a jury. Upon the hearing of the cause the defendant Jennie Miller was dismissed from the complaint, and judgment was entered by the court against the defendant William C. Miller for the sum of $6,212.50 damages and costs of suit; whereupon the defendant filed his motion for a new trial, which was overruled, and defendant appealed to this court.

Plaintiff's complaint was filed on January 12, 1898, and alleged that ever since 1883 he and his predecessors in interest had been cultivating and farming one hundred and sixty acres of land in the Barbacomari Valley; that the same could only be cultivated by irrigation, and that by means of a dam in the Barbacomari Creek he conducted the water of said creek through a canal onto his land; that in December, 1896, the defendant, Miller, built a dam in the Barbacomari Creek, above plaintiff's ditch, and built a ditch across plaintiff's ditch, thereby filling it up, and depriving plaintiff of water during the year 1897, by reason whereof plaintiff lost his crops growing on said land for that year. The allegations were fully denied, and upon the trial the court made full findings of fact covering all the allegations in the complaint, as well as the result of the evidence upon many contested facts. Barbacomari Creek, during most of the year, and especially in the dry seasons, furnishes but a small amount of water at the place where plaintiff diverts water for his canal. During the flood seasons the banks of the creek are often rent and torn with the torrents. Plaintiff's land lies but a short distance below the old point of diversion, and had been in cultivation by himself and others for a great many years. It was cultivated formerly by a man by the name of Harris,

from whom Douglas purchased it. Harris made the first
appropriation of water for the land, and sold his interest in
the water appropriation and diversion and his interest in the
canal to the plaintiff, Douglas, at a period so early that
there can be no question, under the evidence in the record,
about plaintiff's appropriation being prior to any appropria-
tion of the waters of Barbacomari Creek made by the de-
fendant, Miller, or any of his predecessors. The defendant,
Miller, is the owner of the Brookline ranch, which was fenced
and used for the purposes of pasture, principally, if not alto-
gether, by his predecessor in interest, W. C. Land, since about
the year 1883 or 1884. At the time the Brookline pasture was
fenced by defendant's predecessor, Harris was already di-
verting water from the Barbacomari Creek. The Brookline
pasture-field, as fenced by W. C. Land, lay on both sides of
the Barbacomari Creek down to the point where Harris had
made his diversion of the water. There is some conflict in the
evidence as to whether the point of diversion was inside of
the Brookline pasture-field or outside. Land says it was on
the outside, just where his fence crossed the creek. At that
place there was a natural pool, which had been formed in the
creek-bed by reason of the roots of willow trees growing there
in a clump and cluster. Plaintiff's ditch was so constructed
that he made of the pool a sort of reservoir, so that, when irri-
gating his lands, he could get a stronger irrigating head than
could be obtained by the steady flow of the water in the creek.
In 1890 the floods of the rainy season changed the chan-
nel of Barbacomari Creek, leaving the pool and the point
of diversion one thousand feet or more away from the
new channel of the creek. Plaintiff then went up through
the pasture-fields of the Brookline ranch, owned by W. C.
Land, to about the place where the new channel connected
itself with the old channel, and there built a dam in Barba-
comari Creek, and constructed a canal from that point down
through the Brookline pasture-field to plaintiff's ditch at
the old point of diversion at the pool, and there joined the
new canal on to the old, and by that means again diverted
water from the Barbacomari Creek. The waters of the creek
never regained the old channel between these two points, but
have since continued to flow through the new channel around
through a different portion of the Brookline pasture-field,

and away from plaintiff's land. The defendant, Miller, came into possession of the Brookline pasture-field in 1896, and soon after coming into possession made a diversion of the waters of the Barbacomari Creek above the new dam of the plaintiff, as located in 1890, and constructed a canal for himself, ran it through the Brookline pasture-field across plaintiff's ditch, and filled up plaintiff's ditch, and thereby prevented plaintiff from using his canal, or obtaining water from the Barbacomari Creek. Plaintiff's dam at the new point of diversion was a temporary structure,—a brush and rock dam,—and suffered destruction every year from the floods to the extent that its reconstruction was every year necessary. The government title to the Brookline pasture-field at the time of the acts complained of had not been obtained by the defendant, Miller. It was still government land, and Miller's rights to it were such rights as come from inclosure and possession. The two questions to which the attention of the court is directed, are: First, the extent to which the plaintiff committed trespass in going through the Brookline pasture-field, and constructing his canal, and building his dam on Barbacomari Creek within the pasture-field; and second, the question of damages under the pleadings and the evidence.

The position is assumed by the defendant that plaintiff had no right to go through the Brookline pasture-field; that every time he went into the field to reconstruct the dam he was a trespasser; and that, being a trespasser, the defendant could fill up plaintiff's ditch without being subjected to damages. It is conceded by the defendant that an appropriator of water can change his point of diversion, but it is denied that he can enter the inclosure of another for that purpose; and some argument has been made before the court and on brief as to what extent one may go upon the inclosure of another, while the same is public land, to make such new diversion. There is some conflict in the evidence as to whether the Brookline ranch from the time that W. C. Land inclosed it had been in the actual, or even the legal, occupation of any one during all the years up to the time defendant went into possession of it. Land claims that he was all the time in possession, and using it, until he sold it to Miller. If so, he and his successor are estopped by acquiescence. It is certain, under

the evidence, that Douglas built the canal through the Brookline ranch in 1890, and ever afterwards, up until he was disturbed, in December, 1896, maintained the canal and maintained the dam in the Brookline ranch. If Land was in possession of it, he had allowed all time to go by in which either he or his successor to him could complain. If he were not in possession, and the ranch was of the nature of unoccupied public land at the time Miller came into possession, it is clear that Miller would have to take it subject to the conditions in which he found it.

As to the question of damages, there is an assignment of error that "the court erred in finding damages which were excessive, fanciful, speculative, and remote, as appears by the findings and the evidence." If this assignment is sufficiently specific, it possibly can be maintained in the sixteenth finding, in which the court found that plaintiff's loss in the year 1897 was for alfalfa hay, $3,562.50; loss of fruit trees, vines, berries, $400; loss of garden vegetables, $150; or a total of $4,112.50. Loss for the year 1898: Alfalfa hay, $1,900; cost of reseeding alfalfa, $200; total, $2,100,—making a total loss for the two years of $6,212.50. Plaintiff's complaint was filed on January 12, 1898, and set out facts existing up to that time, and prayed for damages which had accrued up to that time. No amendment or supplemental complaint covering the year 1898 was ever filed. An amendment was made changing the amount of damages claimed, and was filed, by leave of the court, after trial, to conform to the proofs. Without pleadings covering the year 1898, it was improper to receive evidence of the injury sustained in 1898. Plaintiff undertook to place the damages arising in 1898 as a result of the acts of defendant in 1896 and 1897, and his evidence tends to show that his losses in 1898 were the result of the death of the alfalfa in 1897, from the acts of defendant committed in 1897. He recovered damages for the loss of alfalfa hay in 1897 because the alfalfa died. If he could recover for 1898 because of the same death, he could also recover for 1899, and so on. There can be but one loss, and hence one recovery only. Plaintiff obtained an injunction against acts of the defendant at the time of filing his action (January 12, 1898), which remained during the pendency of the action; thus precluding any interference on the part of defendant in 1898,

and making it conclusive that the damages assessed for 1898 were for the loss suffered in 1897, about which damages had been once assessed.

The appellee complains that the assignment of errors by the appellant should not receive attention of this court, because the specifications of the grounds of error are not sufficiently stated. We are disposed to criticise the appellant for the paucity of his statements under his assignments of error. They come quite close to the border line of being too general for consideration. The first assignment of error must receive our condemnation, which is, "That the court erred in overruling a motion for a new trial." In *Newmark* v. *Marks,* 3 Ariz. 224, 28 Pac. 960, this court refused to investigate the record to discover wherein the trial court erred, under the allegation of a general assignment of error. Our rules of court (rule 6, 4 Ariz. xi, 35 Pac. vii) provide that "all assignments of error must distinctly specify each ground of error relied upon, and the particular ruling complained of." Subdivision 2 of that rule provides: "If the assignment of error be that the court overruled a motion for a new trial, and the motion is based upon more than one ground, the same will not be considered as distinct and specific by this court, unless each ground is separately and distinctly stated in the assignment of errors." Counsel relies on the statute in relation to motions for new trial, approved March 22, 1893, (Act No. 21, Laws 1893,) and says that, if the motion for a new trial is not required to be specific, an assignment of error which specifies the general grounds of the motion in conformity with the statute is sufficient. Even without the aid of our rule, we feel appellant's contention is untenable; but, inasmuch as the rule was adopted by the court after the act referred to was passed, the rule operates upon the statute in such a way as to make it necessary in the assignment of errors that "the court erred in overruling a motion for a new trial" to specify in what particular the court erred; all of which can be readily done without stating the argument necessary to be employed to sustain the assignment.

The court can render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained or the damages to be assessed or the matter to be decreed is uncertain. In finding

that the court erred in assessing damages for 1898, it will not be necessary to resubmit the case to the district court for a new trial. The findings for damages for 1897 are specific, and fully sustained by the evidence, or at least supported by sufficient evidence to make it improper for an appellate court to disturb the judgment. It is the order of this court that the judgment be modified by striking out the sum of $2,100, found by the district court to have been sustained by the plaintiff in the year 1898; that the case be remanded; and that the district court enter judgment in the case as thus modified.

Sloan, J., and Doan, J., concur.