### CHANDLER et al. v. POMEROY et al.

#### (Circuit Court of Appeals, Third Circuit. August 1, 1899.)

#### No. 8.

1. CONTRACT—CONSTRUCTION—AGREEMENT FOR DIVISION OF ESTATE.

The will of a testator created three active trusts, the income from which was to be paid respectively to a son and two daughters during their lives, and provided for the distribution of each fund on the death of the life beneficiary. Under such provision the son had no interest in the corpus of either fund in any event, and the interest of each daughter was indeterminate, and wholly contingent on her surviving her brother or sister. After the funds had been paid into the hands of the trustee, and at a time when the son and two daughters were the only surviving children, they entered into an agreement for the purpose of settling litigation between them, by which it was provided that the remainder of the estate should be equally divided between them, and that the proceeds or revenue to be derived from such trust funds "shall be treated as a joint fund, and divided equally between the last three parties, and, so far as it lies in our power, we, the parties hereto, covenant and agree that the said trust fund shall be considered and be the joint fund of the last three parties." *Held*, that the fund therein referred to was the income fund, and that the agreement did not include the corpus of the trust funds, in which the son had no interest, and over which neither of the daughters had at that time any power of disposition.

2. APPEAL—SUFFICIENCY OF ASSIGNMENTS OF ERROR.

The circuit court of appeals will not consider an assignment of error which fails to set out separately and particularly the error relied on as required by rule 11.

Appeal from the Circuit Court of the United States for the District of New Jersey.

Wm. B. Guild, for appellants.

John G. Johnson and George Baldwin Newell, for appellees.

Before ACHESON and DALLAS, Circuit Judges, and BUFFINGTON, District Judge.

BUFFINGTON, District Judge. This is an appeal by Frank R. Chandler and others from a decree entered by the circuit court for the district of New Jersey dismissing exceptions to and confirming a master's report. The facts of the case are fully stated in the opinion of the supreme court of the United States directing an accounting (Chandler v. Pomeroy, 143 U. S. 318, 12 Sup. Ct. 410), and the subsequent opinion of the circuit court upon such accounting (Chandler v. Pomeroy, 87 Fed. 262). They need not, therefore, be here restated.

The first, second, third, and fourth assignments allege the supreme court in the case mentioned decided the corpus of certain trust funds created by the will of George Pomeroy were included in the agreement of April 13, 1887, upon which the accounting is based, and that the circuit court failed to follow such decision in that regard; and, further, that, if the supreme court did not pass on that question, the circuit court erred in excluding the corpus of said funds from this accounting. To us it is clear the supreme court have not passed on this question. The late Mr. Justice Bradley having dismissed the bill (46 Fed. 533), an appeal was taken to the supreme court, where the case was reversed, and an accounting ordered. The question before that court being the liability to account under the agreement, it declined to pass on the question whether the corpus of the trust funds was covered by the agreement, saying:

"We do not find it necessary upon this appeal to put a construction upon the agreement to determine whether it applies to the principal as well as the income of the trust funds, or whether in this suit the court may proceed to a partition of the real estate. These questions will arise more properly upon the settlement and enforcement of the decree."

Thereafter the circuit court did decree that the corpus of the trust funds was not covered by the agreement. In so doing, we think, there was no error. The agreement in question was made between George P. Pomeroy, Julia Morrison, and Josephine Pomeroy, who were the sole surviving children of George Pomeroy. George Pomeroy, the father, by his will, created, inter alia, three active trusts, the corpus of which had been paid, to, and at the date of the agreement was in the hands of, the trustee, the New York Life Insurance & Trust Company. Such trustee was neither a party to the agreement nor to this bill. The first fund was $30,000, for the benefit of George P. Pomeroy during life, and at his death the trustee was "to pay and divide the securities and the proceeds thereof equally between my three younger children, Edward, Julia, and Josephine, and the survivors of them." It was further provided that at the division of the fund, "if either Edward, Julia, or Josephine shall have died, leaving issue, who shall be then surviving, such issue shall take by way of representation." While Edward was dead, without issue, when the agreement in question was made, to wit, April 13, 1887, it is quite clear that at that time Julia and Josephine had no determinate vested interest in the corpus. If both were living at the death of George P. Pomeroy, they took, but, if either or both were dead, leaving issue, then such issue was to take by way of representation. The second trust fund was one of $50,000, the interest on which was to be paid to Julia during life; and another, of like amount, the interest on which was to be paid Josephine during life. At the death of either it was provided that her trust fund was to be paid to her issue, and, in default of issue, to Edward and the surviving sister, or the survivor; the issue of Edward and of the other daughter representing their parents. Such being the case, it is quite clear that when the agreement was made neither Julia nor Josephine had present power to divert the corpus of these three funds from the trusts to which they were subjected by the will of

George Pomeroy, and George P. had no interest in them, either personally or as devisee of Edward, and it was then uncertain who would receive the corpus at the death of the respective life beneficiaries. Edward Pomeroy, the executor, at the time of his death, had not only failed to settle his father's estate, but the amount payable by him to that estate was undetermined, and in litigation. By his will his brother George was made his residuary legatee, but what passed under the will depended on the quantum of his liability to his father's estate. The settlement of these two estates involved expense and family disputes, and a professed object of the agreement was "to settle the estate of George Pomeroy, deceased, without litigation, and to adjust the claims of the parties hereto against the estate of said Edward Pomeroy, and to suppress and terminate all suits pending against said Edward Pomeroy at the time of his death, brought by the parties hereto or either of them." To do this it was agreed that "the remainder of the estate of George Pomeroy, deceased, shall be equally divided" between the three surviving and contracting children, and the estate of Edward shall be divided in the same way. The expressed purpose was fully provided for by thus blending the two estates, and making George, Josephine, and Julia participate equally. As the trust funds were already paid to the trustee, as they formed no part of "the remainder of the estate of George Pomeroy," it is clear they were not embraced in the foregoing provisions, or affected by the terms thereof. It is contended, however, that the corpus of the trust funds was made subject to this agreement by one of the latter clauses, which provided: .

"It is further covenanted and agreed that in the division of the estate the proceeds or revenue to be derived from the trust fund for the benefit of George P. Pomeroy, Julia Pomeroy Morrison, and Josephine Pomeroy, created by will of George Pomeroy, deceased, shall be treated as a joint fund, and divided equally between the said last three parties; and, so far as it lies in our power, we, the parties hereto, covenant and agree that the said trust fund shall be considered and be the joint fund of the said last three parties."

The effect of this clause, as construed by the master and the court below, was to form a joint income fund of $130,000, from which George P. drew the interest on $43,333.33 while contributing but the interest on $30,000, while the sisters contributed $50,000 each, and drew interest on but $43,333.33 each. Not content with this construction and result, the appellants claim, when George P. died, and ceased to contribute anything whatever to the joint fund, his sisters should continue to divide their income with his estate; and, in addition thereto, it is contended that the corpus of said trust funds passed by this agreement. It will be noted that no part of said corpus, or any interest therein, belonged to or was released to his sisters or contributed by George P. Pomeroy, for all contingent interest of Edward in the corpus of all the funds ceased on his death without issue, and, of course, no interest of Edward in them passed to George under the former's will. The clause in question provided that in the division of the estate, not the trust fund, but "the proceeds or revenue to be derived from the trust fund, * * * shall be treated as a joint fund, and divided equally between the last-named parties." This

division of proceeds or revenue is the only division made by the entire clause, for the subsequent clause only provides: "And, so far as it lies in our power, we, the parties hereto, covenant and agree that the said trust fund shall be considered and be the joint fund of the said last three parties." Now, it is clear that the parties could not divide, assign, or transfer the ownership of the corpus fund. Indeed, one of them—George P.—had no interest, present or prospective, in that corpus, nothing to transfer; hence, as to him, the covenant, if it be construed as appellants contend for, had no force or application, and yet he was one of the parties covenanting in that particular clause, viz.: "We, the parties hereto, covenant and agree that the said trust fund shall be considered and be the joint fund of the three last parties." But he had an interest in the income of one of the trust funds, and this it was the purpose of the preceding clause to contribute and divide. This latter clause, which it will be observed is not separated from the preceding one, or distinct therefrom, thus constituting a new sentence, and suggesting an additional subject-matter, merely follows the first, is joined to it by a copulative word, and must be deemed a mere addition, a means of accomplishing the main purpose, to wit, the division of the income. To effectuate this purpose, the parties agreed that the trust fund should be considered and be the joint fund of the three parties. Thus read, we have a natural, reasonable, and unstrained construction, and one which gives effect to every part of the instrument. It follows, therefore, that the circuit court did not err in its construction of the trust agreement, and the first, second, third, and fourth assignments of error, relating thereto, are not sustained.

The fifth assignment of error fails to set out separately and particularly the error asserted, as required by rule 11. It is true, reference is made to a schedule of complainants, printed in the record, which covers some 35 pages, and embraces hundreds of items; but any or all of these may constitute the error complained of. This court is an appellate one, and the purpose of its rules is the designation of specified errors. As this assignment specifies no particular error, but practically involves a re-examination of the entire subject-matter involved in the schedule referred to, it is faulty.

The sixth assignment is even more so. It virtually calls for a review and re-examination of the entire subject-matter, without assigning any specific error made by the court, other than the entering of its decree, and failure to enter one for the complainants.

The seventh and eighth assignments are not sustained. The time and manner of sale of the household effects were, under the circumstances, matters to be determined by the court. The record discloses nothing to call in question anything connected with the sale. Indeed, the error was not insisted upon at the bar.

The ninth and tenth assignments specify no particular error.

The eleventh exception assigns for error that the circuit court had not dealt with the real estate embraced in the agreement, but wholly neglected to carry into effect the terms of the agreement in reference thereto. This question was raised in the court below by appellants' eighth exception to the master's report. The opinion of the court

shows this exception was withdrawn, and that partition was made by the courts of the several states in which the lands were situate. The court below having abstained from considering the question at the instance of the appellants, the appellants cannot, either in good faith or correct practice, make error of that to which they assented in the court below.

The remaining assignments are of such general, indefinite character as to require no discussion. Finding no error in any of the matters complained of, the appeal must be dismissed, at the appellants' costs, and the decree of the circuit court affirmed.